[Cite as *State ex rel. Masiella v. Brimfield Twp. Bd. of Trustees*, 2017-Ohio-2934.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO ex rel. ANTHONY J. MASIELLA, et al., | : | **O P I N I O N** |
| Relators-Appellants, | : | |
| - vs - | : | **CASE NO. 2016-P-0038** |
| BRIMFIELD TOWNSHIP BOARD OF TRUSTEES, et al., | : | |
| Respondent-Appellee. | : | |

Civil Appeal from the Portage County Court of Common Pleas, Case No. 2012 CV 00669.

Judgment: Affirmed.

*George J. Emershaw*, Emershaw, Mushkat & Schneier, Quaker Square, 120 East Mill Street, Suite 437, Akron, OH 44308 and *Warner D. Mendenhall*, 190 North Union Street, Suite 201, Akron, OH 44304 (For Relators-Appellants).

*James F. Mathews*, Baker, Dublikar, Beck, Wiley & Mathews, 400 South Main Street, North Canton, OH 44720, *Victor V. Vigluicci*, Portage County Prosecutor, and *Christopher J. Meduri*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Respondent-Appellee).

COLLEEN MARY O'TOOLE, J.

{¶1} Appellants, Anthony J. Masiella, Janet Masiella, Erica Montbach, Tim Montbach, Luther H. Myers, Jr., Patricia M. Kennard, and Mindale Farms Co., appeal from the June 21, 2016 judgment of the Portage County Court of Common Pleas,

granting summary judgment in favor of appellee, Brimfield Township Board of Trustees ("Board of Trustees").[1]  For the reasons stated, we affirm.

{¶2}   Appellants are owners of real property that abuts or is located across the street from a large building in Brimfield Township.  The approximately 807,000 square foot building is currently being used by Rubbermaid as a manufacturing and distribution center.  Rubbermaid employs approximately 175 employees at the site.  Rubbermaid made a substantial investment in its project, in the range of 25 million dollars, which has brought great economic benefit to Brimfield Township.

{¶3}   According to the affidavit of Dick Messner, Brimfield Township Zoning Inspector, in order for the building to be built, the original property owner, John "Paul" Rhoades, sent an application on May 5, 2011 to the Brimfield Township Zoning Commission ("Zoning Commission") to rezone the land from Open Space Conservation (O-C) to Light Industrial (L-1).  Rhoades sought to sell his 93 acres of land to the developer that eventually built the Rubbermaid facility.  On May 11, 2011, a copy of Rhoades' application was sent to the Portage County Regional Planning Commission ("RPC") for its review.  The RPC considered Rhoades' application at its June 8, 2011 public meeting.  After the meeting, the RPC recommended to approve the proposed zoning change.

{¶4}   On June 3, 2011, notice of a public hearing was published in the local newspaper, the *Record Courier.*  And on June 9, 2011, the Zoning Commission held its hearing.  Rhoades' application to rezone the property was considered.  The Zoning Commission recommended to the Board of Trustees that the rezoning be approved.

---

1. In its entry, the trial court also granted the motions for summary judgment of respondents, ARC RMAKNOH001, LLC and Rubbermaid, Inc.  ARC and Rubbermaid are not named parties in this appeal.

2

{¶5} On June 18, 2011, notice of a public hearing was published in the *Record Courier.* And on June 29, 2011, the Board of Trustees held a public hearing on the zone change request. The Board of Trustees passed a resolution to rezone the property from O-C to L-1. A memorandum was sent to the RPC on August 3, 2011 confirming the zone change.

{¶6} Thereafter, concerns were expressed to the Zoning Commission that notice provisions set forth in the Ohio Revised Code relating to the June 9, 2011 Zoning Commission public hearing had not been fulfilled, i.e., that the record could not confirm that notices had been delivered to adjacent property owners and published in the local newspaper in a timely manner. Zoning Inspector Messner indicated in his affidavit that he brought this issue to the attention of the Zoning Commission at a public Zoning Commission meeting on September 1, 2011. Messner also indicated the Zoning Commission decided to commence another procedure to cure any potential error.

{¶7} At a public meeting on September 8, 2011, the Zoning Commission passed a motion to initiate the zone change from O-C to L-1. A public hearing was scheduled for October 18, 2011. Notices of the public hearing were sent via first class mail on September 28, 2011 to the property owners within, contiguous to, and directly across the street from the area of the Rhoades parcel. The notices advertised the date, time, and place of the hearing. Appellants do not dispute that the notices were sent.

{¶8} The Zoning Commission also published a notice of its scheduled public hearing in the *Record Courier* on October 2, 2011. The Zoning Commission heard from members of the public at the October 18, 2011 hearing. Appellants either attended the hearing themselves, had a spouse attend for them, or hired legal counsel to represent

their interest. After the hearing, the Zoning Commission voted to recommence the zoning procedure on November 10, 2011.

{¶9} Notices of the November 10, 2011 hearing were sent to the property owners on October 24, 2011. Appellants do not dispute that the notices were sent. The Zoning Commission also published a notice of its scheduled public hearing in the *Record Courier* on October 28, 2011. At the November 10, 2011 hearing, the Zoning Commission again heard from many members of the public. Appellants either attended the hearing themselves, had a spouse attend for them, or hired legal counsel to represent their interest. Following the hearing, the Zoning Commission voted to recommend approval of the zone change from O-C to L-1 and issued a memorandum to the Board of Trustees.

{¶10} At the November 16, 2011 regularly scheduled public meeting, the Board of Trustees acknowledged notice of the Zoning Commission's recommendation. At that meeting, the Board of Trustees voted to set a public hearing on the issue for November 30, 2011, i.e., the next regularly scheduled meeting. A notice of the scheduled public hearing was published in the *Record Courier* on November 19, 2011. The Board of Trustees held a public hearing on the proposed rezone of the Rhoades property on November 30, 2011. Appellants either attended the hearing themselves, had a spouse attend for them, or hired legal counsel to represent their interest. Attorney Ida McDonald presented a petition to the Board of Trustees signed by appellants indicating they were prepared to file a referendum or a lawsuit related to the zoning amendment.

{¶11} Following the hearing, the Board of Trustees passed a resolution approving the zone change from O-C to L-1, which became effective on December 30,

4

2011. The Board of Trustees did not receive any petition for referendum. Also, appellants did not file an injunction to stop construction of the Rubbermaid facility.

{¶12} On June 11, 2012, appellants filed a complaint against the Board of Trustees alleging three causes of action: Count one, declaratory judgment and injunction (appellants sought a judgment declaring that Brimfield Township's rezoning was invalid because the Board of Trustees and the Zoning Commission had not followed state law or the township's zoning regulations, and an injunction to prevent the zoning from taking effect); and Counts two and three, Ohio's Open Meetings Act and R.C. 121.22 (alleging that the Board of Trustees and the Zoning Commission violated the provisions). The Board of Trustees filed an answer to the complaint.

{¶13} Upon motion of the Board of Trustees, appellants filed an amended complaint on October 28, 2013 against the Board of Trustees and added ARC (the current owner of the property at issue) and Rubbermaid as defendants.[2] The Board of Trustees, ARC, and Rubbermaid filed answers to the amended complaint.

{¶14} The Board of Trustees, ARC, and Rubbermaid filed motions for summary judgment. Appellants filed oppositions. Appellants acknowledged that their declaratory judgment action was moot due to their failure to obtain an injunction to prevent construction of the Rubbermaid building. Thus, the declaratory judgment action was dismissed. Appellants focused on alleged wrongful conduct of the Zoning Commission with regard to the Open Meetings Act.

---

2. The Zoning Commission was never named as a party. The members of the Zoning Commission (in their official capacities) were never named as parties. Also, Brimfield Township (the political subdivision entity) was never named as a party.

{¶15} On June 21, 2016, the trial court granted the Board of Trustee's motion for summary judgment.[3] Appellants filed a timely appeal and assert the following assignment of error:[4]

{¶16} "The trial court committed reversible error when it dismissed the Relators-Appellants' case in the face of genuine issues of material fact as to whether the Brimfield Township Zoning Commission violated Ohio's Open Meetings Act by conducting a special meeting where the Commission members deliberated 'recommencing' the rezoning process without giving prior notice to the Ravenna *Record-Courier*, and as to whether the Zoning Commission later deliberated the zoning question outside the public view, based on the court's view that the Zoning Commission was a party that could have been named in the Relators-Appellants' suit."

{¶17} This appeal involves the trial court's granting of the Board of Trustee's motion for summary judgment.

{¶18} "Summary judgment is a procedural tool that terminates litigation and thus should be entered with circumspection. *Davis v. Loopco Industries, Inc.*, 66 Ohio St.3d 64, 66 * * * (1993). Summary judgment is proper where (1) there is no genuine issue of material fact remaining to be litigated; (2) the movant is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one

---

3. As stated, the trial court also granted the motions for summary judgment of respondents, ARC and Rubbermaid. The court noted that ARC and Rubbermaid were not named parties to appellants' Open Meetings Act causes of action; that appellants had not addressed whether the Board of Trustees had violated the Open Meetings Act; and that the court did not consider evidence that the Zoning Commission may have violated the Open Meetings Act because the Zoning Commission was not made a party to the action.

4. Appellants seek to have the trial court's decision reversed and remanded as to count two of their amended complaint, i.e., the allegation that the Zoning Commission violated the Open Meetings Act.

6

conclusion, and, viewing the evidence in the non-moving party's favor, that conclusion favors the movant. *See e.g.* Civ.R. 56(C).

{¶19} "When considering a motion for summary judgment, the trial court may not weigh the evidence or select among reasonable inferences. *Dupler v. Mansfield Journal Co.*, 64 Ohio St.2d 116, 121 * * * (1980). Rather, all doubts and questions must be resolved in the non-moving party's favor. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 359 * * * (1992). Hence, a trial court is required to overrule a motion for summary judgment where conflicting evidence exists and alternative reasonable inferences can be drawn. *Pierson v. Norfork Southern Corp.*, 11th Dist. No. 2002-A-0061, 2003-Ohio-6682, ¶36. In short, the central issue on summary judgment is, 'whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 * * * (1986). On appeal, we review a trial court's entry of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 * * * (1996)." (Parallel citations omitted.) *Meloy v. Circle K Store*, 11th Dist. Portage No. 2012-P-0158, 2013-Ohio-2837, ¶5-6.

{¶20} Under their sole assignment of error, appellants present two issues:

{¶21} "1. Did the trial court err when it apparently determined that the Brimfield Township Zoning Commission was *sui juris* – and therefore it could disregard evidence of Open Meetings Act violations by the Commission since it had not been named as a Respondent – when township boards and departments are generally not amenable to suit?

7

{¶22} "2. Did the trial court err when it granted summary judgment to Brimfield Township in the face of genuine issues of material fact as to whether the Brimfield Township Zoning Commission violated the Open Meetings Act by failing to give the *Record-Courier* advance notice of a special meeting, as required by law, and by meeting and deliberating a zoning change outside the view of the public?"

{¶23} Because the arguments contained in appellants' first and second issues both involve R.C. 121.22, Ohio's Open Meeting Act, popularly known as the Sunshine Law, we will address them together.

{¶24} "Our review of the trial court's construction of statutes involves questions of law, which we review de novo." *Radtke v. Chester Twp.*, 11th Dist. Geauga No. 2014-G-3222, 2015-Ohio-4016, ¶19 (O'Toole, J., concurred with a Concurring Opinion), citing *Beaumont v. Kvaerner N. Am. Constr.*, 11th Dist. Trumbull No. 2013-T-0047, 2013-Ohio-5847, ¶8.

{¶25} R.C. 121.22, "Meetings of public bodies to be public; exceptions; notice," states in part:

{¶26} "(A) This section shall be liberally construed to require public officials to take official action and to conduct all deliberations upon official business only in open meetings unless the subject matter is specifically excepted by law.

{¶27} "(B) As used in this section:

{¶28} "(1) 'Public body' means any of the following:

{¶29} "(a) Any board, commission, committee, council, or similar decision-making body of a state agency, institution, or authority, and any legislative authority or board, commission, committee, council, agency, authority, or similar decision-making

8

body of any county, township, municipal corporation, school district, or other political subdivision or local public institution;

**{¶30}** "* * *

**{¶31}** "(2) 'Meeting' means any prearranged discussion of the public business of the public body by a majority of its members.

**{¶32}** "* * *

**{¶33}** "(C) All meetings of any public body are declared to be public meetings open to the public at all times. A member of a public body shall be present in person at a meeting open to the public to be considered present or to vote at the meeting and for purposes of determining whether a quorum is present at the meeting.

**{¶34}** "The minutes of a regular or special meeting of any public body shall be promptly prepared, filed, and maintained and shall be open to public inspection. The minutes need only reflect the general subject matter of discussions in executive sessions authorized under division (G) or (J) of this section.

**{¶35}** "* * *

**{¶36}** "(F) Every public body, by rule, shall establish a reasonable method whereby any person may determine the time and place of all regularly scheduled meetings and the time, place, and purpose of all special meetings. A public body shall not hold a special meeting unless it gives at least twenty-four hours advance notice to the news media that have requested notification, except in the event of an emergency requiring immediate official action. In the event of an emergency, the member or members calling the meeting shall notify the news media that have requested notification immediately of the time, place, and purpose of the meeting.

{¶37} "* * *

{¶38} (H) A resolution, rule, or formal action of any kind is invalid unless adopted in an open meeting of the public body. A resolution, rule, or formal action adopted in an open meeting that results from deliberations in a meeting not open to the public is invalid unless the deliberations were for a purpose specifically authorized in division (G) or (J) of this section and conducted at an executive session held in compliance with this section. A resolution, rule, or formal action adopted in an open meeting is invalid if the public body that adopted the resolution, rule, or formal action violated division (F) of this section.

{¶39} "(I)(1) Any person may bring an action to enforce this section. An action under division (I)(1) of this section shall be brought within two years after the date of the alleged violation or threatened violation. Upon proof of a violation or threatened violation of this section in an action brought by any person, the court of common pleas shall issue an injunction to compel the members of the public body to comply with its provisions.

{¶40} "(2)(a) If the court of common pleas issues an injunction pursuant to division (I)(1) of this section, the court shall order the public body that it enjoins to pay a civil forfeiture of five hundred dollars to the party that sought the injunction and shall award to that party all court costs and, subject to reduction as described in division (I)(2) of this section, reasonable attorney's fees. * * *"

{¶41} The Open Meetings Act, as codified in R.C. 121.22, contemplates that the individual boards are sui juris and to be named in litigation relating to the Act. Here, appellants did not name the Zoning Commission and Brimfield Township. As stated, on

10

June 11, 2012, appellants filed a complaint against the Board of Trustees. On October 28, 2013, appellants filed an amended complaint against the Board of Trustees and added ARC and Rubbermaid as defendants. However, the Zoning Commission was not named as a party. The members of the Zoning Commission (in their official capacities) were not named as parties. Also, Brimfield Township (the political subdivision entity) was not named as a party.

{¶42} The record reveals that the Board of Trustees set forth its position in its supplemental motion for summary judgment that appellants failed to name the proper party. However, appellants never responded to that position in their opposition, even though they now bring this issue on appeal.

{¶43} "Generally, appellate courts do not 'consider an error which the complaining party "could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court."' *State ex rel. Quarto Mining Co. v. Foreman,* 79 Ohio St.3d 78, 81 * * * (1997), quoting *State v. Williams,* 51 Ohio St.2d 112, 117 * * * (1977). Where a party asserts an argument for the first time on appeal, the argument is waived. *State ex rel. Camaco, LLC v. Albu,* 10th Dist. Franklin No. 13AP–1002, 2014-Ohio-5330, * * *, ¶8–9." (Parallel citations omitted.) *Wells Fargo Bank, N.A. v. Watson*, 11th Dist. Ashtabula No. 2014-A-0062, 2015-Ohio-2599, ¶64.

{¶44} In any event, Ohio's Open Meetings Act contemplates that the individual board will be sui juris. R.C. 121.22 outlines the requirements for meetings of public bodies. If a violation is found, the remedy calls for an injunction of the public body that committed the violation. *See* R.C. 121.22(I)(1)-(2)(a); *Maddox v. Bd. of Dirs. of Greene*

11

*Cty. Children Servs. Bd.,* 2d Dist. Greene No. 2013-CA-38, 2014-Ohio-2312, ¶10, 12[5] ("We find that the OMA itself made CSB sui juris for purposes of Maddox's lawsuit. Under the OMA, a 'public body' includes any agency, authority, or similar decision-making body of any county. R.C. 121.22(B)(1)(a). * * * In short, we conclude that CSB qualified as a 'public body' and that R.C. 121.22 explicitly makes a public body subject to an OMA suit for injunctive relief, civil forfeitures, court costs, and attorney fees."); *Danis Montco Landfill Co. v. Jefferson Twp. Zoning Comm.*, 85 Ohio App.3d 494 (2d Dist.1993) (the appellee brought suit against the Zoning Commission and the Board of Trustees for violations of R.C. 121.22, Ohio's "Sunshine Law" – demonstrating that a Zoning Commission is sui juris.)

**{¶45}** A key purpose of Ohio's Open Meetings Act is to provide notice to the public and have open meetings. Citizens are entitled to due process and equal protection. Transparency is paramount to promoting justice and instilling public faith in our system of governance. In this case, there is no direct evidence of any Open Meetings Act violation. We find that proper notice was provided to the public and open meetings were held.

**{¶46}** A violation of the Ohio Open Meetings Act requires evidence that a majority of a public body met at a pre-arranged meeting and discussed or deliberated on a matter of public business, outside of a public meeting. *See Radtke, supra,* at ¶19-25.

---

5. Appellants assert that this court's decision in *Ciganic v. Kaley*, 11th Dist. Portage No. 2004-P-0001, 2004-Ohio-6029, undermines the *Maddox* decision. *Ciganik*, however, involves a different statute with different language. Instead of a Zoning Commission and the Ohio Open Meetings Act, R.C. 121.22, (at issue in the case at bar), *Ciganik* involves a Sheriff's Department and the Public Records Act, R.C. 149.351.

**{¶47}** Although not properly raised below, appellants now allege that the Zoning Commission violated the Open Meetings Act by failing to provide adequate notice of a September 1, 2011 "special meeting." Ohio Sunshine Law authorizes regular meetings, special meetings, and emergency meetings. A special meeting requires at least 24 hours advance notice. *See* R.C. 121.22(F).

**{¶48}** There is no evidence that any local newspaper or other media requested notification of such meeting. Zoning Inspector Messner was responsible for sending out meeting notices. Messner testified during his deposition that notice was sent at least three days in advance, i.e., in compliance with the code for a special meeting. Messner also indicated that proper notice of a special meeting was sent to the *Record Courier.* There is no direct evidence that the meeting was secret or closed from the public. The minutes from the September 1, 2011 Zoning Commission meeting reveal there was no action or vote taken. Rather, as stated, the Zoning Commission passed a motion to initiate the zone change from O-C to L-1 at the following regularly scheduled public meeting on September 8, 2011.

**{¶49}** In addition, appellants allege the Zoning Commission held a closed-door meeting on November 10, 2011 and the Board of Trustees conducted an improper meeting on November 30, 2011. The record does not establish any Open Meetings Act violations on either of these dates.

**{¶50}** As stated, notices of the November 10, 2011 hearing were sent to the property owners on October 24, 2011. Appellants do not dispute that the notices were sent. The Zoning Commission also published a notice of its scheduled public hearing in the *Record Courier* on October 28, 2011. At the November 10, 2011 hearing, the

13

Zoning Commission again heard from many members of the public. Appellants either attended the hearing themselves, had a spouse attend for them, or hired legal counsel to represent their interest. Following the hearing, the Zoning Commission voted to recommend approval of the zone change from O-C to L-1 and issued a memorandum to the Board of Trustees.

{¶51} At the November 16, 2011 regularly scheduled public meeting, the Board of Trustees acknowledged notice of the Zoning Commission's recommendation. At that meeting, the Board of Trustees voted to set a public hearing on the issue for November 30, 2011, i.e., the next regularly scheduled meeting. A notice of the scheduled public hearing was published in the *Record Courier* on November 19, 2011. The Board of Trustees held a public hearing on the proposed rezone of the Rhoades property on November 30, 2011. Appellants either attended the hearing themselves, had a spouse attend for them, or hired legal counsel to represent their interest. Attorney Ida McDonald presented a petition to the Board of Trustees signed by appellants indicating they were prepared to file a referendum or a lawsuit related to the zoning amendment.

{¶52} Following the hearing, the Board of Trustees passed a resolution approving the zone change from O-C to L-1, which became effective on December 30, 2011. The Board of Trustees did not receive any petition for referendum. Also, appellants did not file an injunction to stop construction of the Rubbermaid facility.

{¶53} Appellants allege that Zoning Commission members were seen exiting a closed-door meeting. We note, however, that it is not sufficient for a plaintiff to demonstrate that a meeting occurred, but rather must also demonstrate that a public action resulted from a deliberation in the meeting that was not open to the public. *See*

14

*e.g. Holeski v. Lawrence*, 85 Ohio App.3d 824, 829 (11th Dist.1993). The members of the Zoning Commission indicated they did not engage in any discussion of the zone change with any other member outside of the public hearing. And appellants themselves had no evidence that the alleged meeting was prearranged, that the zoning issue was discussed, or that the zoning amendment resulted from a closed-door session. Thus, appellants have no direct evidence to support an Open Meetings Act violation. Accordingly, the trial court did not err in granting summary judgment in favor of appellee.

{¶54} For the foregoing reasons, appellants' sole assignment of error is not well taken. The judgment of the Portage County Court of Common Pleas is affirmed.


THOMAS R. WRIGHT, J., concurs,

DIANE V. GRENDELL, J., concurs in judgment only with a Concurring Opinion.

————————————————

DIANE V. GRENDELL, J., concurs in judgment only with a Concurring Opinion.

{¶55} I concur in the judgment to affirm the trial court's grant of summary judgment in favor of the appellee.

{¶56} I concur in judgment only because I do not believe it is necessary to decide the issue of whether a zoning commission is sui juris for the purposes of the Open Meetings Act. The appellants have failed to raise a genuine issue of material fact that the Open Meetings Act has been violated. This is sufficient to affirm the trial court's decision. Since it is not necessary to address what would be an issue of first

impression for this court on which there is conflicting authority, this court should decline to do so.

{¶57} Accordingly, I concur in judgment only.